SHOPTAW v. SEWELL.

4-3793

Opinion delivered March 25, 1935.

C. C. Wait, for appellant.

Hays & Smallwood, Robert Bailey and Marveline Osborne, for appellees.

SMITH, J. The opinion on the former appeal in this case recites the proceedings whereby J. J. Shoptaw, in February, 1931, became the sole owner of the assets of the Sewell-Overman Company, a copartnership of which he had been a member. The terms of the dissolution agreement whereby Shoptaw became sole owner entitled him to all the assets and required him to pay all the obligations of the firm. Pursuant to this power and duty, Shoptaw brought this suit against Sewell, the senior member of the firm, and Robert Bailey, to cancel deeds executed by Sewell individually to Bailey. Upon the original submission of the cause in the court below, a demurrer was sustained to the complaint, upon the ground that its allegations were insufficient to state a cause of action, and the complaint was dismissed; but we reversed that decree, thereby holding that the complaint did state a cause of action. Shoptaw v. Sewell, 185 Ark. 812, 49 S. W. (2d) 601.

Upon the remand of the cause the following facts were developed. Through court proceedings, which are

recited in the complaint referred to in the former opinion, the firm became the owner of certain lands and town lots, the title to which was taken in the name of Sewell as an individual, and not in the name of the firm of which he had been a member and for whose use and benefit he held the equitable title.

The three persons composing the firm at the time of its final dissolution had agreed that each should advance the firm the sum of $600, and Sewell applied to the Bank of Russellville for a loan of that amount, and which he told Bailey would be used for that purpose. The bank made the loan to Sewell of $600, and took a note indorsed by Bailey and by Sewell's brother for that amount. Overman, the third member of the firm, failed to raise the $600 which he had agreed to furnish, and upon that failure neither Sewell nor Shoptaw made the advance which they had agreed to make, and Sewell used the $600, which he had borrowed, for his own private purposes, having no relation to the firm's business. By way of security, and to indemnify Bailey from liability upon his indorsement of the $600 note payable to the bank's order, Sewell conveyed the land and town lots above mentioned to Bailey by two instruments, which were in form warranty deeds, but which Bailey admits were intended to be mortgages in fact. Sewell did not pay the note to the bank, and Bailey, as indorser, was compelled to do so. Shoptaw prayed in his original complaint that Sewell be declared trustee for the lands there described, and that the deeds from Sewell to Bailey be cancelled as a cloud upon his title as owner of the assets of the firm of which he (Shoptaw) had become sole owner.

Bailey admits that the deeds to him were executed by way of security only, and he prays that a lien be adjudged upon the lands in his favor to the extent of the debt which those instruments were given to secure. The court awarded Bailey that relief, and Shoptaw has appealed from that decree.

This relief was granted upon the finding of fact, which appears in the decree, reading as follows: "That thereafter, on March 14, 1933, said Bailey was compelled to pay said indebtedness, amounting to $678.51, and held said deeds as security for the repayment of same, and

that said Bailey took said liens without any notice of said Sewell's wrongful conduct or without any fact to put him on notice, and that therefore the said Bailey has a valid subsisting lien on said lands for the repayment of said money, and that the plaintiff (Shoptaw) should have title to the equity of redemption thereon.''

Now, the undisputed fact is that the copartnership, of which both Shoptaw and Sewell were members, permitted Sewell to take title to the property in question in his individual name, although the undisputed testimony also shows that Sewell held the title in trust for the firm of which he was a member. In a suit for an accounting between Sewell and his former partners, he might be required to account to them for the value of their interests in the property which he conveyed without their authority to Bailey. But this is not a suit for an accounting between these partners. The question for decision is, who shall sustain the loss which will result from Sewell's wrongful use of the partnership assets? This loss must fall upon the partnership, and, so far as this appeal is concerned, upon Shoptaw as the owner of the remaining assets of the copartnership. The partnership allowed Sewell to take title to partnership property in his individual name, and allowed him to continue as the ostensible owner until, as found by the court below, the rights of an innocent third party had accrued.

In the recent case of *O'Berg* v. *Bank of Sulphur Springs*, 183 Ark. 625, 37 S. W. (2d) 700, the rule, often declared, was restated that: ''Where two parties to a fraudulent transaction are equally innocent, and the loss must fall upon one, it should fall upon the one who, in law, most facilitated the fraud.''

The person free from fault is Bailey; the persons whose inactivity and overconfidence are responsible are the plaintiff and his former copartners.

As showing Sewell's lack of good faith, it is pointed out that before conveying these lands to Bailey he had charged their value to his account on the books of the firm at a much smaller sum than their actual value, and for a much smaller sum than it had cost the partnership to acquire them. A sufficient answer to this contention is to say that under the decree, from which Sewell has not ap-

pealed, Shoptaw was given the right to redeem these lands by paying only the money which Bailey advanced upon the innocent assumption of Sewell's right to convey them to him.

The decree must therefore be affirmed, and it is so ordered.